IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TODD MEAGHER, | § | CIVIL ACTION NO. |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4-21CV-710-O |
| | § | |
| CITIBANK, N.A. | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## COMPLAINT

TO THE HONORABLE UNITED STATES JUDGE:

COMES NOW Todd Meagher ("MEAGHER") and files this Complaint against CITIBANK, N. A. ("CITIBANK") for willful and negligent violation of Section 1681s-2 of the Fair Credit Reporting Act, and would respectfully show as follows:

### PARTIES

1. Plaintiff Todd Meagher is an individual residing in Tarrant County, Texas.

2. Defendant CITIBANK, N. A., is a national banking association offering consumer credit card services to consumers and an information furnisher to the consumer reporting agencies Experian, Trans Union and Equifax, with a place of business located at 701 East 60th Street North, Sioux Falls, South Dakota 57104.

### JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over Plaintiffs' claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331

4. Personal jurisdiction exists over Defendants as it has the necessary minimum contacts with the State of Texas, this suit arises out of Defendants' specific conduct with Plaintiff in Texas, and Plaintiff was injured in Texas.

5. Venue is appropriate in the United States District Court for the Northern District of

Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1391, as the events giving rise to Plaintiff's claims occurred in Tarrant County, Texas.

6. Plaintiff is a natural person and citizen of the State of Texas, residing in Tarrant County, Texas.

7. Plaintiff is a "consumer" as defined by the 15 U.S.C. § 1681a(c).

8. Defendant Citibank, N.A. has its principal place of business located in the State of South Dakota, and regularly conducts business in the State of Texas.

## INTRODUCTION

9. MEAGHER has been involved in the consumer credit industry for over 25 years and has worked directly with all three of national major consumer reporting agencies Experian, Trans Union and Equifax. In 1994, MEAGHER co-founded Credit.com with former director of consumer affairs Adam K. Levin, a website offering consumer credit information. In 1998, MEAGHER founded Credit411.com, one of the first companies to offer consumer credit reports from all three consumer reporting agencies Experian, Trans Union and Equifax directly to consumers via the Internet. MEAGHER has been cited in national magazines including Kiplinger (Personal Finance) (2000) and ComputerWorld (2002). MEAGHER has a deep understanding of Fair Isaac Company credit scores ("FICO") and developed the first "online credit score generator."

10. MEAGHER sold Mortgage.Com in 1998, which ironically is now run by CITIBANK. MEAGHER sold his interest in Credit.com in 2003 to his co-founder Adam K. Levin. MEAGHER still operates Credit411.com and is currently developing CreditMonitor.com.

11. Maintaining a reputation as an experienced savvy credit user and trusted consumer credit information advisor has been critical to his success in securing funding, developing and selling several consumer credit ventures including Credit.com and Mortgage.com.

## FACTUAL ALLEGATIONS

12. In 2018, CITIBANK solicited, and MEAGHER accepted, an offer to open an American Airlines AAdvantage Citi Platinum Select consumer credit card account on March 27, 2018.

13. Credit card statements provided to MEAGHER by CITIBANK from the opening of his account in 2018 through January 2021, show MEAGHER was a "convenience user" who rather than make minimum monthly payments, paid his balance in full each month.

14. On or about January 23, 2020, MEAGHER attempted to use his credit card to pay for a meal with family and friends and CITIBANK declined the charge.

15. On or about January 23, 2020, without warning or explanation, CITIBANK blocked MEAGHER's ability to access his credit card account information or make payments online.

16. On or about February 11, 2020 MEAGHER received a credit card statement that showed his account balance was $253.46 with a required minimum payment of $25.00 due by March 7, 2020.

17. Prior to the payment due date, and because his ability to make payments online had been blocked, on February 13, 2020, MEAGHER mailed a check to CITIBANK for $253.46, the entire outstanding balance due on his account.

18. On February 18, 2020, CITIBANK posted MEAGHER's check payment for $253.46 to his account leaving a balance of $0.

19. From April 2018 through February 2020 or for nearly two years, CITIBANK furnished information to consumer reporting agencies that indicated MEAGHER's account as Never Late, all his required monthly payments as Paid on time, and that his account had an "Exceptional payment history."

20. On or about October 29, 2020, nearly eight months after making his final and timely payment, without warning or explanation, CITIBANK changed the payment history

information it had been furnishing to the consumer reporting agency Experian for nearly two years, and began furnishing information to Experian that indicated several of MEAGHER's monthly payments had been charged off[1] by CITIBANK.

21. Also on or about October 29, 2020, CITIBANK stopped furnishing MEAGHER's monthly balances and payment history information to the consumer reporting agencies that indicated MEAGHER had an exceptional payment history, had paid his account balance in full each month instead of the required minimum monthly payments, and that his account had a $0 balance.

22. These changes had an adverse effect on MEAGHER's Fair Issac Company ("FICO") credit scores and created a materially misleading impression of MEAGHER's payment history, outstanding liabilities and creditworthiness, crippling his ability to obtain credit.

23. FICO scores, also known as risk scores, are sold to credit providers by consumer reporting agencies who use them to determine a persons creditworthiness, weather to approve or deny a person credit, and impacts the interest rate a person pays for use of credit. In some cases, these scores impact a person's ability to get insurance or even a job.

24. As someone whose reputation, and often his ability to raise funding for his online credit ventures, relied on his savvy use of credit, he monitored his credit reports, the information being furnished to the consumer reporting agencies and his FICO scores, and in September of 2020, MEAGHER contacted Experian and disputed the changes to the information being furnished by CITIBANK as inaccurate and incomplete.

25. Experian informed MEAGHER that CITIBANK had verified the disputed information as accurate.

26. After reviewing his credit card and bank statements, and confirming that he had

---

[1] Experian describes a charge-off as an entry on your credit report that indicates a creditor, after trying and failing to get you to make good on a debt, has given up hope of getting payment and closed your account. A charge-off is considered a derogatory entry in your credit file—a serious negative event—and it can adversely affect your credit scores and your ability to borrow additional funds. https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/ A charged-off debt is deemed uncollectable and treated as a loss for accounting purposes. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010)

4

made all his monthly payments timely and that none of them had been charged off, MEAGHER again contacted Experian and re-disputed the accuracy and completeness of the information being furnished by CITIBANK.

27. Again, Experian informed MEAGHER that CITIBANK had again verified the information it was furnishing to Experian was accurate including that it had charged off monthly payments due on MEAGHER's account.

28. When MEAGHER attempted a third time to dispute the inaccurate and incomplete information being furnished by CITIBANK to Experian by offering to provide Experian with his copies of his CITIBANK credit card and personal bank statements, Experian informed MEAGHER, "You have previously disputed this item. We are not required to process a duplicative dispute" and to "contact the furnisher of the information (CITIBANK) directly" to resolve the dispute.

29. MEAGHER then contacted CITIBANK's Office of the President ("COP") directly.

30. MEAGHER explained to COP that the information CITIBANK was furnishing to Experian related to his account had recently been changed, and that CITIBANK was now furnishing inaccurate and incomplete information including that that several of his monthly payments had been charged off.

31. MEAGHER informed COP that he had attempted to dispute the inaccurate and incomplete information with Experian, but that Experian informed him that CITIBANK had verified the information as accurate, and instructed him to contact CITIBANK directly to resolve the dispute.

32. MEAGHER explained to COP he wanted to refinance his house to take advantage of historically low interest rates and that Experian had told him that the information CITIBANK was furnishing to Experian was negatively impacting his FICO credit score, and prohibiting him from doing so.

34. MEAGHER informed COP that as the founder of Credit.Com, Mortgage.com,

Credit411.com and Credit911.com his credit reputation was important to him and that he was very familiar with CITIBANK's obligations as a information furnisher under the Fair Credit Reporting Act ("FCRA")[2].

35. MEAGHER informed COP that CITIBANK's continued verification of the inaccurate and incomplete information it was furnishing Experian forced him to submit multiple disputes delaying the correction of the information far beyond the requirements of the FCRA.

36. MEAGHER informed COP that CITIBANK's continued verification of the inaccurate and incomplete information it was furnishing Experian was preventing him from obtaining credit and specifically refinancing his home at a time of record low interest rates.

37. COP told MEAGHER that they could "see" in the computer that his credit card payments had never been late, and that in fact his account had a credit balance for $14.50 due and asked if he would like CITIBANK to send him a check for the $14.50 and MEAGHER accepted.

38. On December 15, 2020, MEAGHER received the overpayment reimbursement check from CITIBANK.

39. COP told MEAGHER that CITIBANK's Executive Response Unit ("ERU") handled issues like his and that an "analyst" from that unit would contact him within 15 days to discuss his dispute.

40. MEAGHER did not receive a call from an CITIBANK's ERU analyst within 15 days as promised by COP.

---

[2] Under 15 U.S.C. § 1681s-2(b), a provision of FCRA that regulates how the furnishers of credit information must respond when they are given notice of a dispute over consumer credit records. Section 1681s-2(b) provides, in relevant part: (1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the **completeness or accuracy** of any information provided by a person to a consumer reporting agency, the person shall— (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is **incomplete or inaccurate,** report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information. 15 U.S.C. § 1681s-2(b). If a furnisher fails to comply with these requirements, then § 1681n and § 1681o "authorize[] consumers to bring suit for damages caused by a furnisher's . . . breach" when that breach is willful or negligent, respectively. *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014).

41. MEAGHER then called ERU directly. He was informed that the name of the analyst assigned to review his dispute was "Timothy" and that unfortunately, Timothy was not available to speak to him but would call him back.

42. After several days of receiving no call back from Timothy, MEAGHER again called ERU and this time was able to speak to Timothy. MEAGHER explained to Timothy the information CITIBANK was furnishing Experian had been changed and was now inaccurate including that several of his monthly payments had been charged off. Timothy was very sympathetic and confirmed that he could "see" on his computer that MEAGHER had paid all his monthly payments on time, that none of his monthly payments or any monies owed to CITIBANK, were charged off. He told MEAGHER he would have the information being furnished to Experian corrected, that it might take Experian approximately 30 days to update their records.

43. On December 31, 2020, MEAGHER received a letter from ERU that stated "We certainly regret any inconvenience you have experienced in your attempts to resolve this matter. We confirmed that your above-referenced account was not included in a bankruptcy. We requested that the consumer reporting agencies reflect the account as closed by customer request and to remove bankruptcy information being reported. Please allow 30 days for them to update their records."

44. MEAGHER immediately contacted the ERU and asked to speak to Timothy. He explained that the confirmation letter he received did not address the primary issue he had contacted the ERU, that CITIBANK was furnishing inaccurate and incomplete monthly payment history information to the consumer reporting agency Experian including that CITIBANK had charged off several of MEAGHER's monthly payments. MEAGHER was then informed that the dispute had been closed by Timothy and that he would have to open a new "case" with the ERU and a new analyst. MEAGHER was told the name of the new analyst would be "Amy" and that she would contact him within another 15 days.

45. After weeks of not hearing from Amy, MEAGHER frustrated, again called COP and

spoke to "Sarah Carey". He explained to Ms. Carey that he had been communicating with the ERU and that several analysts had failed to call him back on numerous occasions forcing him to submit several "cases" resulting in months of delay in addressing his disputes regarding the information CITIBANK was furnishing to Experian and demanded to speak to Amy or anyone that could resolve his disputes right away.

46. Ms. Carey told MEAGHER there was no one that could help him with his disputes accept the ERU. She then asked MEAGHER if he wanted to open another new dispute with the ERU and a different ERU analyst and that if he did, that would result in another 15 day delay before he received a callback.

47. At this point, MEAGHER had been attempting to have CITIBANK investigate and correct the incomplete and inaccurate information it was furnishing to Experian for several months and told Ms. Carey that CITIBANK was violating the FCRA, that he was unwilling to wait any longer for them to investigate and correct the information being furnished to Experian.

48. MEAGHER also told Ms. Carey that several COP and ERU employees had already checked his account on their computers and acknowledged that the monthly payment information being furnished to Experian was inaccurate and incomplete and therefore why was he being required to wait for months for an investigation that has failed to occur.

49. Ms. Carey told MEAGHER "she could see all she needed to see" on her computer and that regardless of what other at the COP or the ERU had said, she had no intention of changing the information being furnished to Experian.

50. MEAGHER then asked Ms. Carey to be connected to Amy (the analyst that was currently assigned to his dispute) and that if she was not available he would hold. Ms. Carey told MEAGHER Amy was not available and that she would not put him on hold until she was available. Frustrated, MEAGHER stated he would call back every two hours and ask for Amy until she was available.

51. Ms. Carey's response to MEAGHER's frustration was "you are going to call us

every two hours until you get an analyst on the phone?" MEAGHER replied "Yes, I need this dispute to be investigated and resolved I've been dealing with this for months."

52. Ms. Carey then informed MEAGHER that CITIBANK was no longer going to accept his phone calls regarding his disputes, that CITIBANK was not going to change the information that it was being furnished to Experian, and that in fact, she was going to re-report to the consumer reporting agencies the negative bankruptcy information that the ERU had previously removed.

53. Ms. Carey then stated that she was going to furnish the same inaccurate and incomplete information to the other consumer reporting agencies Equifax and Trans Union.

54. On January 18, 2021, Ms. Carey's threats materialized and CITIBANK flagged MEAGHER's CITIBANK account with the consumer reporting agency Equifax as a charge off.

55. On January 18, 2021, the consumer reporting agency Trans Union notified MEAGHER that "CITICARDS CBNA has flagged your account as Payment after charge off/collection with Equifax, which may negatively impact your FICO credit score based on Trans Union data."

56. On January 26, 2020, MEAGHER received a letter from the ERU stating "while we understand your desire to have this matter resolved in your favor, with this final letter, we consider the issue resolved. We will no longer respond to inquiries regarding this matter." The letter made no mention of any investigation into MEAGHER's disputes or findings resulting from one.

57. On February 8, 2021, MEAGHER made one final call to COP and spoke to CITIBANK employee Tessha Taylor. MEAGHER asked Ms. Taylor to look at his account on her computer and confirm the fact that it indicated that he had made his final payment timely on February 18th 2020, that his account was closed on February 26, 2020, and that at the time it was closed it had a zero balance. Ms. Taylor confirmed all of these facts to be true.

58. CITIBANK has provided MEAGHER with no explanation as to why MEAGHER's disputes have not been reasonably investigated, or on what basis or facts CITIBANK verified the

information it was furnishing to Experian as accurate.

## FIRST CAUSE OF ACTION
### Violation of 15 U.S. Code § 1681s–2 - Responsibilities of furnishers of information to consumer reporting agencies
### (Willful Noncompliance)

59. MEAGHER realleges and incorporates paragraphs 1 through 58 as though fully set forth herein.

60. CITIBANK violates 15 U.S.C. § 1681s-2(b) by failing to reasonably investigate MEAGHER's disputes that CITIBANK was furnishing inaccurate and incomplete information to the consumer reporting agency Experian; by failing to review all relevant information regarding MEAGHER's disputes; by failing to correctly report the results of an accurate investigation to consumer reporting agencies; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of its own inaccurate representations to consumer reporting agencies.

61. CITIBANK knowingly, willfully and recklessly failed to comply with the requirements of 15 U.S. Code § 1681s–2.

62. CITIBANK is liable under FCRA § 1681n for willful non-compliance, which provides for statutory penalties of up to $1,000 per violation, as well as punitive damages and attorneys fees.

## SECOND CAUSE OF ACTION
### Violation of 15 U.S. Code § 1681s–2 - Responsibilities of furnishers of information to consumer reporting agencies
### (Negligent Noncompliance)

63. Paragraphs 1 through 62 are re-alleged as though fully set forth herein.

64. CITIBANK was well aware of MEAGHER's dispute that CITIBANK was furnishing inaccurate and incomplete information to the consumer reporting agency Experian and was negligent in complying with the requirements of 15 USC §1681s-2.

65. CITIBANK violates 15 U.S.C. § 1681s-2(b) by failing to reasonably investigate MEAGHER's disputes that CITIBANK was furnishing inaccurate and incomplete information to

the consumer reporting agency Experian; by failing to review all relevant information regarding MEAGHER's disputes; by failing to correctly report the results of an accurate investigation to credit reporting agencies; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of its own inaccurate representations to consumer reporting agencies.

66. CITIBANK is liable under FCRA § 1681o for negligent non-compliance, which provides for statutory penalties of up to $1,000 per violation, as well as punitive damages and attorneys fees.

67. Everyone from a janitor to a judge understands the impact of negative items on a consumer credit reports and poor credit scores can have on one's financial and emotional well-being. As a result of CITIBANK's failure to comply with the requirements of FCRA, MEAGHER has suffered, and continues to suffer, actual damages, damage to reputation, and emotional distress for which he seeks damages in an amount to be determined by the jury.

**PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Plaintiff Todd Meagher prays for the following relief:

1. A judgment declaring that (a) none MEAGHER's monthly credit card payments were never charged off by CITIBANK; (b) all of MEAGHER's monthly credit card payments were made timely (c) no monies owed to CITIBANK were ever discharged in a bankruptcy;

2. A judgment ordering CITIBANK to furnish information to Experian, Trans Union and Equifax that indicate; the minimum amount due and payments made by MEAGHER each month that his account was open; (b) that MEAGHER's account has a zero balance;

3. A judgment ordering CITIBANK to destroy any internal notes and records that indicate that MEAGHER's payment history was anything but satisfactory or that could negatively impact MEAGHER's ability to obtain or maintain credit within or outside of CITIBANK;

4.     Costs and expenses incurred in the action including attorneys fees;

5.     Any other equitable relief that the court deems appropriate; and,

6.     For such other, further, or different relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues set forth in this Complaint.

Dated: June 2, 2021.

Respectfully submitted,

By: _____

Todd Meagher
2101 Legacy Court
Keller, Texas 76248
Phone: (817) 403-1188
Email: toddme@gher.com
PRO SE LITIGANT

JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Todd Meagher

### DEFENDANTS
CITIBANK N.A.

**(b)** County of Residence of First Listed Plaintiff: Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant:
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Todd M

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [x] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S. Code § 1681
Brief description of cause:
Violation of FCRA

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 06/02/2021
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____